

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 10, 2025

**BY ECF**
The Honorable Loretta A. Preska
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Naasón Joaquín García, et al.*, S1 25 Cr. 370 (LAP)

Dear Judge Preska:

    Pursuant to Rule 16(d) of the Federal Rules of Criminal Procedure, the Government respectfully moves for the entry of the Proposed Protective Order (the "PPO"), attached as Exhibit A. The PPO is necessary in this case given the nature of the charges and the sensitivity of the evidence that will be provided during discovery. The Government and counsel for defendant Naasón Joaquín García ("Naasón") have agreed on most provisions in the PPO. Naasón's counsel object to the PPO's Attorney's Eyes Only ("AEO") provisions, which require that defense counsel retain sole possession of material produced under that designation and not disclose its contents to the defendants unless and until the AEO designation for that material is modified by the Government or the Court. PPO ¶¶ 4, 9.[1] For the reasons set forth below, the PPO should be entered in its entirety.

    **I.**    **Background**

    The operative indictment (the "Indictment") charges Naasón, Rosa Sosa, Azalia Rangel García, Eva García de Joaquín, Joram Núñez Joaquín, and Silem García Peña with federal racketeering, child pornography, and sex trafficking offenses, including sex trafficking obstruction offenses. The Indictment charges that the defendants participated in the Joaquín LLDM Enterprise, a group who, for years, exploited members of La Luz Del Mundo Church. Naasón, García de Joaquín, and Núñez Joaquín were arrested in the United States on September 10, 2025, and the other three defendants remain at large, likely in Mexico.

---

[1] Naasón also requested that the Government include an express agreement in Paragraph 16 to allow the defense to provide Disclosure Material to foreign witnesses and investigators. The PPO now includes that change. The Government understands that Naasón's co-defendants, Eva García de Joaquín and Joram Núñez Joaquín, are deferring to Naasón's position with respect to the PPO.

      The Rule 16 discovery material in this matter includes, among other things, a substantial amount of electronically stored evidence ("ESI"), including data obtained from numerous cellphones and data storage devices, iCloud accounts, email accounts, financial records, travel records, photos and videos, and law enforcement reports. Some of the ESI contain highly sensitive material that, if prematurely disclosed, could (a) compromise the privacy and confidentiality of individuals and entities; (b) impede the Government's ongoing investigation of unapprehended and uncharged individuals; and (c) risk prejudicial pretrial publicity if publicly disseminated. A subset of the material in this matter is sensitive and sexually explicit in nature and its disclosure could lead to the identification of victims and witnesses. Other discovery contains personal identifying information ("PII") of victims, including those who were victimized as minors. It contains hundreds of photos and videos depicting child sexual abuse material ("CSAM")—also known as child pornography—as well as additional sexually suggestive photos and videos of minors and young adults.

      The PPO contains various protocols designed to protect against the harms that would flow from unauthorized disclosures of Rule 16 materials and other materials produced pursuant to *Brady*, *Giglio*, the *Jencks* Act, and 18 U.S.C. § 3500. The PPO contemplates that the Government will produce these materials marked with certain designations, including "Disclosure Material," "Sealed Material," "Attorney's Possession Only Material," and "Attorney's Eyes Only Material." PPO ¶¶ 1-4, 12. Each of those designations carries different restrictions on the use and dissemination of the material. The "Attorney's Eyes Only" designation, for example precludes the defense from sharing AEO material or the content of such material "with any other persons, including the defendants, except for any personnel for whose conduct defense counsel is responsible." PPO ¶ 9.

      Although the PPO provides that the Government's disclosure designations are initially controlling, the PPO builds in a procedure for the defense to seek to remove or modify those distinctions for particular pieces of discovery. PPO ¶ 12. Consistent with Local Rule 16.1, the PPO requires the defense and the Government first to meet and confer about any designation dispute. If the parties cannot resolve the dispute on their own, then the PPO provides that the defense may request that the Court modify the designation over the Government's objection. This procedure is common in this District, and it works well. For example, the Government frequently produces *Jencks* Act material earlier than statutorily required and initially marks some or all of that material with an AEO designation. Once the case proceeds closer to trial, however, the Government often agrees to sunset its AEO designation for *Jencks* Act material and convert that designation to the less-restrictive Attorney's Possession Only or Sealed Material designations.

      **II.**    **Applicable Law**

      Rule 16(d) provides that, "for good cause" shown, the Court may "deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The Advisory Committee Notes on the 1966 Amendment to Rule 16(d) state that a court should consider, among other things, "the safety of witnesses and others, a particular danger of perjury or witness intimidation, [and] the protection of information vital to the national security." *United States v. Urena*, 989 F. Supp. 2d 253, 262–63 (S.D.N.Y. 2013). The burden of establishing good cause rests with the movant, which must show that the proposed restrictions address "a clearly defined,

specific and serious injury." *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013). Protective orders in criminal cases are standard and serve important functions, particularly where, as here, the Government plans to "provide ... [an] array of discovery materials," *id.* at 546, in an expeditious manner. "[T]he Supreme Court has held that 'the trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Id.* at 521 (quoting *Alderman v. United States*, 394 U.S. 165, 185 (1969)).

It is well-established that the need to protect the safety and privacy of witnesses constitutes good cause for the entry of a protective order. *See, e.g., United States v. Maxwell*, 2020 WL 4431834, at *1 (S.D.N.Y. July 30, 2020) ("As a general matter, it is undisputed that there is a strong and specific interest in protecting the privacy of alleged victims and witnesses in this case that supports restricting the disclosure of their identities.").

### III.     Discussion

Here, there is no dispute that good cause supports the entry of a protective order or that the vast majority of the provisions in the PPO are appropriate, including the Disclosure Material, Sealed Material, and Attorney's Possession Only ("APO") provisions. PPO ¶¶ 1-3, 5-7. The only dispute is whether the protective order should contain a protocol to mark material with an AEO designation—not about whether any particular piece of discovery should be marked with that designation.

In this case, which involves significant witness safety, obstruction, and privacy concerns, an AEO designation protocol is appropriate. The defendants are charged in Count One with obstructing the investigation into their misconduct, including by destroying evidence and intimidating victims. As a result, there are significant witness safety and obstruction concerns. The discovery material also implicates substantial witness privacy concerns. The Rule 16 discovery will include a small set of materials that the Government would initially designate AEO, subject to re-designation closer to trial or if the defense raises a well-grounded objection to the designation of particular documents on an earlier timeline. The purpose of marking these materials AEO is to facilitate their prompt disclosure without laborious and time-consuming redactions, which may delay discovery productions. These materials principally contain (i) the PII of victims, including those who were victimized as minors, which would require extensive redactions that cannot be completed in a short period of time; and (ii) sensitive and sexually explicit material whose disclosure could lead to the identification of victims and witnesses, and cannot practically be redacted quickly. The inclusion of an AEO designation protocol will facilitate the prompt production of discovery that will enable the defense to more quickly receive the materials and to review them without redactions that would limit the information visible to defense at this stage in the proceedings.

The AEO designation protocol will also help the Government produce to defense counsel materials earlier than otherwise required. For example, in two other cases also involving multiple alleged victims of sex trafficking, the parties agreed to a protective order with an AEO designation, which allowed the Government to agree to provide defense counsel in the future with *Jencks* Act and 3500 material significantly in advance of trial to aid in their preparation. The Government

initially marked this material with an AEO designation, and it later agreed to re-designate the material closer to trial. *See* Dkt. 163, *United States v Alexander*, 24 Cr. 676 (VEC) (S.D.N.Y. Sept. 8, 2025) (schedule in which the Government will produce 3500 material with an AEO designation on October 27, 2025, and automatically re-designate that material without an AEO designation on December 8, 2025, ahead of a January 5, 2026, trial); Dkt. 125, *United States v. Combs*, 24 Cr. 542 (AS) (S.D.N.Y. Jan. 8, 2025) (schedule in which the Government produced 3500 material with an AEO designation on March 21, 2025, and automatically re-designated that material without an AEO designation on April 4 and April 18, 2025, ahead of a May 5, 2025, trial). This process allowed defense counsel access to prosecution witness statements far earlier than they would otherwise be legally entitled. *See, e.g.*, *United States v. Perez*, 2025 WL 41612, at *5 (S.D.N.Y. Jan. 7, 2025) ("The Court has no authority to order pretrial disclosure of witness statements producible only under the Jencks Act."); *accord United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001) ("We have previously held that Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements."). With an AEO designation, the Government is willing to follow the same general practice as in *Alexander* and *Combs*. Absent an AEO provision, the Government would not be willing to provide witness statements much earlier than legally required.

Defense counsel has claimed to the Government that an AEO provision would infringe on the defendants' Sixth Amendment rights by prohibiting defense counsel from discussing certain discovery with their clients. That concern is groundless. The AEO provisions of the PPO are not designed to impede the defendants' ability to prepare a defense or their right to counsel. To the contrary, the AEO provisions are designed to facilitate earlier and broader discovery productions than otherwise would be practical, let alone legally required, so that defense counsel and their staff can make efficient use of those materials. In cases that involve substantial witness safety and obstruction concerns, like this one, courts commonly enter protective orders with AEO designations over defense objections along the lines of the Sixth Amendment argument that defense counsel has raised. *See, e.g.*, Dkt. 63, *United States v. Ho Wan Kwok*, 23 Cr. 118 (AT) (S.D.N.Y. May 4, 2023) (entering protective order that included AEO provision over the same Sixth Amendment objection).

In any event, defense counsel's objection to the use of AEO designations is unripe. This is a simple procedural motion: The Government is requesting that the Court enter an order establishing a protocol for the Government to state how it believes certain discovery materials should be handled and for the defense to raise any objections to the Government's views on that issue. The Government is not currently asking the Court to rule conclusively on whether any particular document may be AEO-restricted. In fact, the PPO expressly contemplates further discussions between the parties and, if necessary, motion practice to resolve any AEO-designation disputes. It would be premature now, before discovery has been produced, for the Court to rule on how the defense's Sixth Amendment arguments and the Government's substantial witness safety, obstruction, and privacy concerns, described above, interact to resolve purely theoretical disputes about AEO designations. It would be more appropriate for the Court to wait to rule on the defense's Sixth Amendment arguments until a substantive dispute over the AEO designation of particular documents has been concretized pursuant to the PPO's procedures and raised in an appropriate motion.

\* \* \*

  For the reasons set forth above, the Government respectfully requests that the Court enter the Proposed Protective Order.

                 Respectfully submitted,

                 JAY CLAYTON
                 United States Attorney

            By: /s/
                 Ryan W. Allison
                 Lisa Daniels
                 Elizabeth A. Espinosa
                 Michael R. Herman
                 Assistant United States Attorneys
                 Southern District of New York
                 (212) 637-2200

cc: Counsel of record (by ECF)